THE PEOPLE OF THE STATE OF NEW YORK, Respondents, *v.* THE HOME INSURANCE COMPANY, Appellant.

The statement in the act (Chap. 542, Laws of 1880, as amended by chap. 361, Laws of 1881) providing for the taxation of certain corporations and associations, that the taxes imposed thereby "shall be applicable to the payment of the ordinary and current expenses of the State," is a sufficient compliance with the requirement of the State Constitution (Art. 3, § 20) that every law imposing a tax "shall distinctly state * * * the object to which it is to be applied."

The taxes upon corporations, imposed by said act, are taxes upon franchises, not upon property, and the fact that dividends, a portion of which is derived from securities exempt from taxation, furnish the basis for computing the amount of the tax, does not invalidate it.

In taxing corporations under the act the State authorities are not required to deduct the amount of stock which the corporation holds in United States bonds from the total amount of its capital stock and to compute the tax only upon dividends derived from the remainder.

The legislature has, by virtue of its jurisdiction over corporations organized under its laws, authority to impose such a tax.

In performing the duty of levying taxes the legislature may, in its discretion, impose unequal or double taxes, and in determining the question of legislative power the courts are precluded from considering that question.

*It seems*, however, that the corporations affected by said act are not thereby subjected to unequal or double taxation.

The authorities showing the distinction between franchise and property taxes collated.

(Argued March 29, 1883; decided May 1, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, in favor of the plaintiff, entered upon a case submitted under section 1279 of the Code of Civil Procedure.

The facts stated in the case submitted are substantially as follows. Defendant, a domestic fire insurance company, in the year 1881, had a capital stock of $3,000,000. On January 1 and July 1, of that year, it declared semi-annual dividends of five per cent each. On January 1, of that year, it had $3,300,000 invested in United States bonds, and on July 1, it had $1,940,-000 so invested; on November 15, it made its report to the State comptroller, as required by the act chapter 542, Laws of 1880, as amended by chapter 361, Laws of 1881, and it tendered to that officer a tax at the rate of one and one-quarter mills upon $1,060,000, which tender was rejected, the comptroller claiming $7,500, "being a tax of one-quarter of a mill upon defendant's capital stock for each one per centum of dividend." The question presented for determination was as to whether any, and if so how much, tax should be aid by defendant under said act.

*Benjamin H. Bristow* for appellant. A tax law must state its object distinctly. (Const., art. 3, § 20.) The object stated in a tax law must be either a defined expenditure, a defined

class of expenditures, or a defined fund for future expenditures. (*Sun Mut. Ins. Co.* v. *City of New York,* 5 Sandf. 10; *People* v. *Sup'vrs of Orange,* 17 N. Y. 235.) "The ordinary and current expenses of the State" is an indefinable object. (R. S., part 1, chap. 9, tit. 1, § 16 [8] ; Laws of 1882, chap. 362.) The statement of object in the tax law in question is a delegation of legislative duty, and is, therefore, unconstitutional. (*People* v. *Sup'rs of Kings,* 52 N. Y. 556, 7, 69 ; Cooley's Const. Lim. 116.) A tax invalid under one name is invalid under any other. (*Macbeth* v. *Ashley,* L. R., 2 Sc. App. 352, 352, 358 ; *Passenger Cases,* 7 How. 283, 458 ; *People* v. *Draper,* 15 N. Y. 532, 539; *Inman St'shp Co.* v. *Tinker,* 94 U. S. 238–244 ; *R. R. Co.* v. *Husen,* 25 id. 465, 472 ; *Almy* v. *California,* 24 How. 169 ; *Bank Tax Case,* 2 Wall. 200 ; *Henderson* v. *Mayor of N. Y.,* 92 U. S. 259, 268 ; *People* v. *Allen,* 42 N. Y. 404, 413 ; *Monroe Sav. B'k* v. *Rochester,* 37 id. 365, 7 ; *New Hampshire* v. *Louisiana,* U. S. Sup. Ct., March 5, 1883.) It is true in particular of so-called franchise and business taxes. (*Cook* v. *Pennsylvania,* 97 U. S. 566 ; *Webber* v. *Virginia,* 103 id. 344, 350 ; *Tel. Co.* v. *Texas,* 105 id. 460, 465.) The tax in question was not a franchise or business, as contra-distinguished from a property tax. (*Monroe Sav. B'k* v. *Rochester,* 37 N. Y. 365, 7 ; *Burke* v. *Bodlam,* 57 Cal. 594, 601 ; *Porter* v. *Rockf., R. I. & St. L. R. R. Co.,* 76 Ill. 561, 578 ; *Veazie B'k* v. *Fenno,* 8 Wall. 543, 547 ; *State R. R. Tax Cases,* 92 U. S. 575, 602–607 ; *San Jose Gas Co.* v. *January,* 57 Cal. 614 ; *Lane County* v. *Oregon,* 7 Wall. 71, 77.) The tax in question impedes and burdens the operations of the United States and is in so far invalid. (*McCullough* v. *Maryland,* 4 Wheat. 316, 436 ; *Lane County* v. *Oregon,* 7 Wall. 71, 77 ; *Bank* v. *Sup'vrs,* id. 26, 30.) A general tax on property, when United States bonds form part of the property, is in so far a tax on the bonds, and in so far invalid. (*B'k of Commerce* v. *N. Y. City,* 2 Black, 620 ; *Weston* v. *Charleston,* 2 Pet. 349.) Any thing equivalent to a tax on capital stock is a general tax on the property of the corporation taxed. (*B'k of*

*Commerce* v. *N. Y. City*, 2 Black, 620 ; *People* v. *Comm'rs, etc.*, 23 N. Y. 192, 193–5 ; *Bank Tax Case*, 2 Wall. 200, 207 ; *Chadwick* v. *Crapsey*, 35 N. Y. 196, 202 ; *Lackawanna Co.* v. *B'k of Scranton*, 94 Penn. St. 221 ; *New Haven* v. *City B'k*, 31 Conn. 106 ; *Trustees of Connersville* v. *B'k of Indiana*, 16 Ind. 105 ; *Burrall* v. *Bushwick R. R. Co.*, 75 N. Y. 211, 216 ; *Wynhamer* v. *People*, 13 id. 378, 433 ; *People, ex rel. Leonard*, v. *Comm'rs, etc.*, 90 id. 63.) The tax in question is a tax on capital stock at its actual value, and a further tax on any item of the property of a company taxed under this law would be double taxation. (*Lackawanna Iron Co.* v. *Luzerne Co.*, 42 Penn. St. 424, 30 ; *Westchester Gas Co.* v. *County of Chester*, 30 id. 232 ; *Coatesville Gas Co.* v. *County of Chester*, 97 id. 476, 81 ; *Phœnix Iron Co.* v. *Commonwealth*, 59 id. 104 ; *Lehigh Crane Iron Co.* v. *Comm.*, 55 id. 448, 451.) The tax in question is a tax on capital stock at a valuation varying as the dividends vary. (*Comm.* v. *C. P. & A. R. R. Co.*, 29 Penn. St. 370 ; *Lehigh Crane Iron Co.* v. *Comm.*, 55 id. 448 ; *Oswego Starch Factory* v. *Dolloway*, 21 N. Y. 449.) Holding the tax in question not to be a tax on property would make it unequal, oppressive and unconstitutional. (*People* v. *Comm'rs*, 76 N. Y. 64, 71 ; *People* v. *Sup'vrs of New York*, 16 id. 424, 439 ; *S. C.*, 20 Barb. 81, 88 ; R. S., part 1, chap. 13, tit. 1, §§ 1, 3, 7 ; Laws of 1881, chap. 361, § 8 ; Cooley on Taxation, 165 ; *Mygatt* v. *Washburn*, 15 N. Y. 316, 319 ; U. S. Const., 14th amendment, § 1 ; Const. of N. Y., art. 1, § 6 ; *Co. of San Mateo* v. *So. Pac. R. R. Co.*, 13 Fed. Rep. 722 ; *Society, etc.*, v. *Town of New Haven*, 8 Wheat. 464, 489 ; *U. S.* v. *Amedy*, 11 id. 392, 412 ; 1 Blackst. Comm. 123 ; 2 Kent's Comm. 267 ; *People* v. *Utica Ins. Co.*, 15 Johns. 358, 382 ; *Detroit* v. *Detroit & H. P. R. Co.*, 43 Mich. 140 ; *Sinking Fund Cases*, 99 U. S. 700, 720, 721 ; *Comm.* v. *Essex Co.*, 13 Gray, 239, 253 ; *Stuart* v. *Palmer*, 74 N. Y. 183, 189, 195 ; *Gordon* v. *Comes*, 47 id. 608, 612 ; *City of Lexington* v. *McMillan's Heirs*, 9 Dana [Ky.], 513 ; *Howell* v. *Bristol*, 8 Bush [Ky.], 498 ; *Parish of Orleans* v. *Cochran*, 20 La. Ann. 373 ;

Burroughs on Taxation, 68; *Portland B'k* v. *Apthorp*, 12 Mass. 252, 258.)

*S. B. Brownell, Julien T. Davies, George Richards, John O. Heald* and *Edward Lyman Short* for companies similarly situated with appellant. The statutes fail to state the object of the tax. (*Sun Mutual* v. *Mayor*, 5 Sandf. 10; 8 N. Y. 241; *People* v. *Sup'rs*, 17 id. 235; *Black River B'k* v. *Sup'rs*, 27 Barb. 583; *People* v. *Sup'rs*, 52 N. Y. 556.) The tax is on the property and not on the franchises or business. (*B'k* v. *Tax Comm'rs*, 2 Blatchf. 620; *People* v. *Comm'rs*, 23 N. Y. 192; *People* v. *Pacific Mail S. S. Co.* v. *Tax Comm'rs*, 5 Hun, 200; 64 N. Y. 541; *Lehigh Crane Iron Co.* v. *Comm'rs*, 55 Penn. St. 457; *Comm'rs* v. *P., Ft. W. & C. R. R.*, 74 id. 83; *Catawissa R. R. Co.'s Appeal*, 78 id. 59; *Hamilton Co.* v. *Comm'rs*, 12 Weekly N. C. 328.) The use of "franchise" in the act of 1881 is without avail. (*People* v. *Compagnie, etc.*, 2 Sup. Ct. Rep. 87; *U. S.* v. *Erie Ry.*, 5 Mo. St. 836.) A franchise tax is different from the present one. (*Spring Valley* v. *Schottler*, 10 Pac. Coast L. J. 430; *Williams* v. *Rees*, 9 Biss. 405; *Atlantic, etc., R. R. Co.* v. *Comm'rs*, 87 N. C. 129; *R. R. Co.* v. *Comm'rs*, id. 426; *Oliver* v. *Mills*, 11 Allen, 273.) Capital stock invested in United States bonds cannot be taxed by the State. (*Weston* v. *Charleston*, 2 Pet. 449; *B'k of Commerce* v. *New York*, 2 Black, 620; *Monroe B'k* v. *Rochester*, 37 N. Y. 365; *People, ex rel. Leonard,* v. *Tax Comm'rs*, 15 W'kly Dig. 299.) The court will look beyond mere words. (*Memphis R. R. Co.* v. *Nolan*, 14 Fed. Rep. 532.) The acts are void because there is no reasonable rule of apportionment. (*State* v. *Auditor*, 46 Mich. 231; *Olcott* v. *Sup'rs*, 16 Wall. 689; *People* v. *Comm'rs*, 76 N. Y. 71; *People* v. *Salem*, 20 Mich. 452; *Gordon* v. *Carnes*, 47 N. Y. 608; Cooley, 60; Burroughs, § 26; *Loan Asso'n* v. *Topeka*, 20 Wall. 655.) The principle of equality of taxation is violated by section 3, chapter 371, Laws of 1881. (*Penn. R. R. Co.* v. *Comm'rs*, 94 Penn. St. 474; *Hamilton Co.* v. *Ivan*, 6 Wall. 641; *Comm'rs*

v. *Hamilton*, 12 Allen, 308; *Penn. R. R. Co.* v. *Comm'rs*, 94 Penn. St. 479; *Lehigh, etc., Co.* v. *Comm'rs*, 55 id. 451; *Comm'rs* v. *P., Ft. W. & C. Ry. Co.*, 74 id. 92; *Howell* v. *Bristol*, 8 Barb. 498; *Comm'rs* v. *Sav'gs B'k*, 5 Allen, 437.) Equality of burden does not exist as between corporations liable to taxation under section 3 and those not liable to taxation under that section, but where capital stock is liable to local taxation, and where real estate is taxed. (*Oswego* v. *Holloway*, 21 N. Y. 45; *People* v. *B'd of Assessment*, 39 id. 81; *People* v. *Harland*, 61 Barb. 273; *B'k* v. *Tennessee*, 104 U. S. 695; *R. R. Co.* v. *Comm'rs*, 87 N. C. 426.) The State has denied to the defendant the equal protection of the laws. (*San Mateo* v. *South. Pac. R. R. Co.*, 13 Fed. Rep. 722.) The State has deprived the defendant of the property for public use, without just compensation. (*Gordon* v. *Caines*, 47 N. Y. 612; *City of Lexington* v. *McMillan's Heirs*, 9 Dana, 513; *Howell* v. *Bristol*, 8 Bush, 498.) In this State the principle of equality is a constitutional one. (*Baldwin* v. *Mayor*, 2 Keyes, 396; *Farmers' Loan & Trust Co.* v. *Mayor*, 7 Hill, 299; *Colonial Life Ass. Co.* v. *B'd of Sup'rs*, 4 Abb. 86; *People* v. *B'd of Sup'rs*, 16 N. Y. 439; *People* v. *Comm'rs of Taxes*, 23 id. 196; *Stuart* v. *Palmer*, 74 id. 189; *People* v. *B'd of Sup'rs*, 20 Barb. 88; *Cowen* v. *Folsom*, 13 Minn. 222.)

*Leslie W. Russell*, attorney-general, for respondent. The statement in chapter 542 of the Laws of 1880, as amended by chapter 361 of the Laws of 1881, that the taxes derived " shall be applicable to the payment of the ordinary and current expenses of the State," was a sufficiently distinct statement of the tax and the object to which it was to be applied under section 20 of article 3 of the Constitution. (*People, ex rel. Burroughs*, v. *Supervisors of Orange Co.*, 17 N. Y. 235, 240, 241; *Sun Mut. Ins. Co.* v. *The Mayor*, 5 Sandf. 10, 14, 15; 8 N. Y. 241; *People* v. *Nat. Ins. Co.*, 27 Hun, 188; Laws of 1871, chap. 717; Laws of 1877, chap. 341; Laws of 1879, chap. 372; Laws of 1881, chap. 453; 1 R. S. [7th ed.] 494; id. 495,

§§ 4, 5, 16, subd. 8; *People* v. *Superv'rs of Chenango Co.,* 8 N. Y. 317, 326, 327.) The franchise of a corporation is equally subject to taxation as its property. (*Provident Inst.* v. *Massachusetts,* 6 Wall. 611, 622; *Soc. for Svgs.* v. *Coite,* 6 Wall. 594; *Portland B'k* v. *Apthorp,* 12 Mass. 252; *Comm.* v. *Five Cent Svgs. B'k,* 5 Allen, 431; Burroughs on Taxation, 164, 165, § 83; *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632; *Monroe Svgs. B'k* v. *City of Rochester,* 37 N. Y. 365.) The objection of the defendant's counsel that if the tax in question is not a property tax, the statute imposing it was repugnant to the fourteenth amendment to the United States Constitution, is untenable. (*St. Louis* v. *Wehrung,* 46 Ill. 392; *Ducat* v. *Chicago,* 48 id. 172; *S. C.,* 10 Wall. 410; *Hughes* v. *City of Cairo,* 92 Ill. 339; *Co. of San Mateo* v. *So. Pac. R. R. Co.,* MSS. opinion; *Youngblood* v. *Sexton,* 32 Mich. 406; *Litchfield* v. *Vernon,* 41 N. Y. 124; *People* v. *The Mayor,* 4 id. 419; Cooley on Taxation, 175, 179; *State R. R. Tax Cases,* 92 U. S. 575, 611; *Comm.* v. *People's Five Cent Svgs. B'k,* 5 Allen, 428, 436, 437; *Slaughter-House Cases,* 16 Wall. 36, 81; *B'k of Chenango* v. *Brown,* 26 N. Y. 467; *State Tax on Foreign Held Bonds,* 15 Wall. 314, 319; *Davidson* v. *New Orleans,* 96 U. S. 97; *Kelly* v. *Pittsburg,* 104 id. 78.)

RUGER, Ch. J. It is claimed by the appellant that the law under which the tax involved in this action was imposed is obnoxious to the provisions of section 20 of article 3 of the Constitution, in that it does not state distinctly the object to which the tax is applicable.

The statement is, that it is "applicable to the payment of the ordinary and current expenses of the State." (§ 9, chap. 542, Laws of 1880.) It was admitted upon the argument, by the learned counsel raising the objection, that it would be impracticable to state the object of a prospective tax in all cases without more or less indefiniteness, and that the question actually to be considered was the degree to which such indistinctness might constitutionally extend. It was further conceded that a provision which defined the object of a tax to be

the replenishment of the general or any other specified and legally recognized fund of the State treasury, or a provision for any one of these funds, or for "unforeseen contingencies," would be a sufficient compliance with the requirement of the Constitution.

We think these concessions are fatal to the contention of the appellant.

To sustain his position it would be necessary for the appellant to demonstrate that the specification of some, out of many, items legally chargeable upon a certain fund is a less distinct statement of the object of a tax than a statement that it is to be applied to replenish the undivided fund itself. It is obvious that this cannot be done. These concessions were of course involuntary, and such as counsel was, by force of controlling adjudications in this court, constrained to make. Even in the absence of such admissions, the decisions referred to would lead to the same result.

The system by which the finances of the State are classified, and the purposes to which their moneys may be applied, is embodied in numerous acts of the legislature creating various distinct and separate funds. Among them is a so-called general fund, which is also recognized by the Constitution. (§ 2, art. 7 of Constitution; 1 R. S. 493 *et seq.*) Each of these several funds aside from the general fund is devoted to some special object, and payment therefrom for any other purpose than that to which it is specifically devoted is prohibited by law. The most, if not all of the ordinary and current expenses of the State, are specifically chargeable to the general fund. (1 R. S. [7th ed.] 496 to 500.) In addition to these special provisions it is further enacted that any appropriation made by the legislature not specially charged to any other fund shall be paid from the general fund. (1 R. S. 500, 501.) It is thus apparent not only that the payment of all the current and ordinary expenses of the State government is chargeable upon the general fund, but also that of various other necessary expenditures. It seems to follow that if the specification of the replenishment of this fund be held to be a sufficiently

distinct statement of the object of a tax within the constitutional requirement, the designation of one or more of the several classes of expenditures lawfully chargeable to that fund would be equally sufficient and distinct. This question has been before this court on several occasions, and the effect of each decision is adverse to the claim made by the appellant.

The first time it was raised, was in the case of *The Sun Mutual Ins. Co.* v. *The City of New York* (reported in 5 Sandf. 10). The statute under which that case arose empowered the board of supervisors of New York county to raise by tax upon the real and personal property subject to taxation in said county the sum of $1,606,525, and described the object of the tax; that it was " to be applied toward defraying the various contingent expenses legally chargeable to the said city and county, and such expenses as the mayor, aldermen and commonalty of the city of New York may in any manner sustain or be put to by law." It was held, Chief Justice OAKLEY delivering the opinion, that the statement of the object of the tax was a sufficient compliance with the constitutional provision. This case was affirmed upon appeal to this court, although the particular question referred to was not discussed in the opinion, and did not even appear to have been mooted. (8 N. Y. 241.) The opinion upon this point, as reported in 5 Sandford, was, however, expressly approved by this court in *The People, ex rel. Burrows,* v. *Supervisors of Orange County* (17 N. Y. 235). The law authorizing that tax directed its proceeds to be paid into the State treasury " to the credit of the general fund." It was held that the description of the object of the tax was as distinct as was reasonably practicable and was a sufficient compliance with the requirement of the Constitution. Mr. Justice HARRIS, delivering the opinion of the court, says : " The sum of the whole argument is this : the general fund is a thing long and well known by every intelligent citizen of the State. Its existence is recognized by the Constitution itself. It is an object to which money has often been and may now lawfully be appropriated. The legislature thought fit to make. an appropriation to this fund. For this purpose it directed a

tax to be levied.   It is distinctly stated in the law that this was the object for which the tax was imposed.   The constitutional requirement in this respect was thus satisfied." We regard the description of the object of the tax in the law of 1880 to be at least as definite and precise as that considered in either of these cases.

It is quite significant that the framers of the clause, as well as of the Constitution of 1846, designated the general fund as the object of a tax laid by that instrument, and thus gave a practical construction by its authors of the meaning of the language under consideration.   The financial operations of the State have now been carried on for nearly thirty-seven years under this provision of the Constitution, and during each of those years questions involving its practical construction have been presented to each branch of the State government, and have been necessarily considered and decided by the various departments.

The almost uniform description of the object of the annual tax levies in the laws authorizing their imposition has been to require their application " to the purposes of the general fund, and for the payment of those claims and demands which constitute a lawful charge upon that fund."    Taxes have been levied by the legislature, collected by the State officers, and disbursed by its authorized agents during this long period without objection as to the sufficiency of such statements or the legality of the method by which these acts were performed, and it would now seem too late to raise a question of such importance and fraught with such dangerous consequences to those engaged in the enforcement of the laws.

If this question were at all doubtful upon authority this constant and uniform construction by every department of the State government for so long a period would have great if not controlling weight upon the interpretation of this provision. We are, therefore, of the opinion that this objection to the constitutionality of the act cannot be sustained.

The only remaining question in the case is whether the State authorities, in taxing corporations under the statutes of

1880 and 1881, are obliged to deduct the amount of stock which such corporations hold in bonds of the United States from the total amount of their capital stock and compute the tax only upon the dividends derived from the remainder of such capital. The agreed statement of facts in this case shows the total capital stock of the appellants to be $3,000,000, of which the sum of $1,940,000 was, on the 1st day of November, 1881, invested in United States bonds. The annual dividend declared by the corporation for the year preceding that date was ten per cent upon its entire capital stock. The tax imposed under these acts, computed upon such dividend, aggregated $7,500. A statement of some of the propositions of law, undisputed or conceded by the respective parties, will limit the range of citation and discussion. No question was made upon the argument as to the correctness of the propositions that a State legislature has no power to levy a tax directly either upon United States bonds held by individuals or corporations, or upon the property represented by such bonds, or the income derivable therefrom ; and that a legislature could not indirectly accomplish an object which it was prohibited from attaining by direct and positive legislation. It was also undisputed that a State, in the exercise of its legislative power, has the right to impose taxes upon the business privileges and franchises of a corporation organized under its laws and from which alone it derives its corporate existence and secures protection in the prosecution of its business. In other words, it is admitted that among the legitimate subjects of State taxation is not only the property of individuals and corporations, but in the case of corporations the very right of exercising the privileges granted to them by the State. These several propositions are also abundantly sustained by the authorities. It thus appears that the only question presented for our consideration under this branch of the appeal is whether the tax in question was in fact levied upon the franchises of the defendant, which would be undeniably lawful, or upon the property of the corporation invested in the securities of the general government, which would be unlawful. It is not claimed that this

law in terms assumes to authorize the taxation of the exempted securities, but it is asserted that it effects this result indirectly, and, therefore, amounts to the exercise of a prohibited power.

This involves an inquiry into the real intention of the legislature in passing this statute. The appellant claims that we must go behind the object declared by that body, and, from the language and effect of the act as well as from other sources of information, hold its real object to be different from its declared intent. Waiving for the present a consideration of the question whether the court has the right by judicial construction to determine that the legislature has in fact exercised a prohibited power, instead of one which it legally might and which it expressly declared it did exercise, we will proceed to examine the question presented upon the theory advanced by the appellant. In the determination of questions involving the construction of statutes and their validity as depending upon legislative intent, we may doubtless legitimately examine the history of the legislation as well as the act itself and acts in *pari materia*. By such examination we are enabled to see the general nature of the scheme inaugurated by the legislature and its relation to prior and existing laws concerning taxation. The statutes in question left the corporations still subject to the payment of local taxes (*The People, ex rel. Westchester F. Ins. Co.*, v. *Davenport et al., Trustees*, 91 N. Y. 574), always constituting the great bulk of taxation in the State, and attempted by a new system to collect only so much of the burdens laid upon them as inured exclusively to the use of the State, by tax upon their franchise alone. They were expressly exempted from the customary tax laid for State purposes upon their property by the general law and thus secured some compensation for this franchise tax by a partial exemption from the usual property tax. Not only the object but also the method contemplated by the legislature were new in many respects. Among other things the law enumerates certain distinct and specified classes of corporations to whom its various provisions shall respectively apply, and for the first time in the history of State taxation the State, as dis-

tinguished from the local authorities, intervened directly not only in the assessment of the tax but also in its collection and the transfer to the State treasury of the funds thus collected. It is also believed to be the first time in the practice of the State that an attempt has been made by a general scheme to impose taxes exclusively upon the franchises and business of corporations organized under its laws and to exact their payment as a condition upon the exercise of the privileges granted them by the State. The tax complained of was levied under section 3 of chapter 542 of the Laws of 1880, as amended by chapter 361 of the Laws of 1881, and which, after describing the corporations subject to its provisions, continues as follows : " shall be subject to and pay a tax upon its corporate franchise or business into the treasury of the State annually to be computed as follows : " ".If the dividend or dividends made or declared by such corporation, joint-stock company or association during any year ending with the 1st day of November amount to six or more than six per cent upon the par value of the capital stock, then the tax to be at the rate of one-quarter mill upon the capital stock for each one per centum of dividends so made and declared." When the dividends are under six per cent another method of computation is provided which it is not here essential to describe. By section five of the same act a further tax of eight-tenths of one per centum upon the gross amount of their receipts for premiums, also as a tax upon their corporate franchise and business, was required to be paid by fire and marine insurance companies annually into the State treasury. The act further provides that such corporations shall be exempted from all further taxation for State purposes except upon their real property. In case of the intentional neglect or refusal of the corporations bound to report their condition or pay the taxes, as therein required, it was provided that an action to recover the tax might be brought by the attorney-general and also that their respective charter and corporate privileges should be forfeited and terminated. We have before seen that the State legislature had an undoubted right by virtue of its jurisdiction over

corporations organized under its laws, to levy such tax upon their business and privileges, aside from all property taxation, as in its discretion it might deem just and proper in order to provide revenues for the State.    Conceding this the appellant claims that because the legislature has directed the amount of this tax to be arrived at in a particular way, *i. e.,* by requiring payment of a percentage upon declared dividends and because such computation may be based in part upon interest derivable from funds invested in United States bonds, such method necessarily invalidates the tax to the extent of dividends accrued from the capital so invested.

We are unable to see why this precise proposition has not been determined adversely to the appellant both by this court and by the Supreme Court of the United States.    The question was substantially involved in *Monroe Savings Bank* v. *City of Rochester* (37 N. Y. 365), where it was held that a tax upon the entire surplus of a savings bank levied as a tax upon the franchises of the corporation was not void although it had a portion of its property invested in United States bonds, and although such bonds were estimated as property in computing the sum upon which the tax was levied.    The franchises of a corporation were held to be proper subjects of taxation, the court saying : " It follows that if such taxation falls within the scope of legislative power, that power may also prescribe a rule or test of value."    " It can hardly be denied that a fair measure of the value of the franchises of corporations would be the profits resulting from their use, and in adopting such a rule of estimate no one could justly complain of its being unequal in its effects upon different corporations or unjust in its general operation."    In *Society for Savings* v. *Coite* (6 Wall, 59) ; *Provident Institution* v. *Massachusetts* (id. 611) ; *Hamilton Company* v. *Massachusetts* (id. 633), the point here involved was also decided.    In the Coite case a law of the State of Connecticut had imposed a tax of three-fourths of one per cent on the total amount which savings banks had on deposit on a day certain in lieu of all other taxes upon them. The bank had on the day specified upwards of half a million

dollars of its deposits invested in United States government bonds, and claimed that such amount should be deducted from its gross deposits by the State authorities in levying the tax. Although the law did not in terms purport to levy a tax upon the franchises or business of the corporation, yet the court held that it was a tax upon the franchise, and was a legitimate exercise of the taxing power of the State. The criticism is made upon this case that the law authorized a tax upon the liabilities of the bank; even if this were so, it would not impair the force of the case as an authority. But the criticism, we think, is not well founded; for, admitting that the deposits of a savings bank represent the amount of its indebtedness, they also indicate its ability to pay, as well as its financial condition. It would be difficult to devise a more accurate test of the value of the franchise of a savings bank than by taking the amount of its deposits as the measure of its prosperity. The case of *Provident Institution* v. *Massachusetts*, immediately following, reaffirmed the proposition laid down in the case of Coite and declared that a tax levied upon the gross deposits of a savings bank was not susceptible to the objection that it was a tax upon government securities.

Mr. Justice CLIFFORD in his opinion says: "It is the corporation that is to make the payment, and if it fail to do so it is liable not only to an action for the amount of the tax, but what is more significant, it may be enjoined from the future exercise of its franchises until all taxes shall be fully paid." And further, discussing the differences existing between franchises and property taxes, he says, in language particularly applicable to this case: "Franchise taxes are levied directly by an act of the legislature, and the corporations are required to pay the amount into the State treasury. They differ from property taxes, as levied for State and municipal purposes, in the basis prescribed for computing the amount, in the manner of assessment and in the mode of collection." "Comparative valuation in assessing property taxes is the basis of computation in ascertaining the amount to be contributed by an individual, but the amount of a franchise tax depends upon the business transacted

by the corporation and the extent to which they have exercised the privileges granted in their charter." This case was followed by the *Hamilton Company Case* in which the conclusions before reached were again affirmed.

The legislature of Massachusetts had enacted a statute by which corporations in that State having a capital stock divided into shares were required to pay a tax of one-sixth of one per cent upon each dollar of the excess of the market value of all such stock over the value of its real estate and machinery. The Hamilton Company had invested $300,000 of its capital in the bonds of the United States. Some of the questions considered involved the construction of constitutional provisions and statutes not applicable here, but the broad doctrine was announced that a law which apportioned a tax upon the franchise of a corporation according to the value of its capital stock, although such capital stock was partially invested in securities exempt from taxation, was not for that reason invalid. The main question argued was, that inasmuch as no express authority existed under the State Constitution to tax the business or franchises of a corporation, unless comprehended in the word "commodities," whether that word conferred the necessary power, and it being held under the long-settled decisions of the State courts that the term did confer such power, the Supreme Court affirmed the validity of the tax as a tax upon franchises and not upon property.

Mr. Justice CLIFFORD, who also wrote in this case, says: "All trades and avocations by which the citizens acquire a livelihood may also be taxed by the State for the support of the State government. Power to that effect resides in the State independent of the Federal government, and is wholly unaffected by the fact that the corporation or individual has or has not made investments in Federal securities."

In neither of the three cases cited was it claimed or suggested upon the argument that if the State legislature had in terms laid the tax upon the business or franchise of the corporation any question as to the validity of the tax could have been successfully raised, but on the contrary it was clearly held

that the State having power to tax the franchise of corporations and having exercised the power, the court would ascribe such exercise to the power which authorized it, although the act levying the tax did not specially designate its character.

Applying the tests derived from these authorities it seems conclusively established that the act under which this tax was levied must be held to have imposed a franchise and not a property tax, and that its enactment constituted a lawful exercise of legislative power. It is levied upon corporations alone, and one of the penalties provided for its non-payment is the forfeiture of their charter. The amount of the tax is dependent upon their business prosperity, as evidenced by their capacity to declare dividends instead of upon the value of the corporate property, and it is made payable by the corporations affected, directly to the State authorities. The income of these corporations is referred to only as a means of arriving at the measure of their liability. As was said in the *Provident Institution Case :* " The subject-matter to be taxed is the corporation, and the average amount of the deposits within the period named furnishes the basis of computing the amount." It was conceded on the argument that neither by statutory nor judicial authority had any fixed basis for computing the taxable value of a corporate franchise been established either by the State or Federal government. It necessarily follows that this question must be decided according to the judgment and discretion of the bodies having authority to tax such privileges, as the occasion for such a decision may from time to time arise. Having this power and having professed to exercise it in a given case, it is not easy to see upon what principle a court can judicially ascribe the legislative action to another power which the legislature is prohibited from exercising. The contention is that we should hold that the legislature has really imposed a tax upon property, while professing only to tax a franchise. In other words, the rule of construction claimed is, that we should impute to the legislature an unlawful intent in a case where its action is plainly sustainable upon justifiable grounds. Well and long-settled rules forbid us from placing

such an interpretation upon statutory enactments, and require us to make every reasonable intendment to uphold rather than to nullify the exercise of legislative authority. The authorities cited would seem to require us to hold this law valid as a tax upon franchise, even though that character had not been expressly ascribed to it by the terms of the act.

The case of the Hamilton Company goes much farther than we need go to sustain the judgment appealed from. There although the value of exempted bonds held by a corporation entered directly into the computation of the amount of a proposed tax,. no portion of the tax was deemed. to have been invalidated thereby. If the principal of such bonds can be considered as a basis for computing the amount of a franchise tax, the partial consideration of the income of such bonds for a similar purpose must be equally unobjectionable.

We have examined the Pennsylvania cases cited by the appellant in support of the proposition that a tax like the one in question had there been judicially decided to be a tax upon capital stock. They do not appear to us to support that proposition. The cases arose under local statutes and were controlled by special provisions therein contained. It is true some of them hold that in a case where the State officers were authorized to tax capital stock alone, the imposition of a tax by them, in which the amount of the tax was determined by the amount of corporate dividends declared, was a tax upon capital stock. This conclusion was reached by force of the rule contained in the maxim " *ut res magis valeat, quam pereat ;*" the court holding that the dividends which were there made the basis of the tax were merely referred to as a means of arriving at the value of the capital stock, which was in fact the subject of taxation. If these cases can be assumed to hold beyond this, they conflict with *Hamilton Company* v. *Massachusetts and Monroe County Bank* (*supra*).

It is further strenuously contended by the appellant that because the amount of the tax authorized to be levied upon corporations dividing less than six per cent annually shall be

graduated by the appraised value of their capital stock, it necessarily follows that the tax in question must be held to be a tax upon capital stock and not upon the franchise. The cases above cited hold directly the contrary. We also think it may safely be assumed that so long as a corporation continues business under its charter the privilege of so doing is of some pecuniary value to it, and that there is no valid reason why the value of the capital stock may not be used as an element for determining the amount of tax levied upon franchise, and why it will not in each year approximate its variable taxable value quite as accurately as any other method. In the present case the dividends are used to determine the value of the corporate franchise, and there is no inconsistency in these modes of estimating the respective values of capital stock and of corporate franchises. The prosperity of a corporation will affect equally the value of its franchises and the market value of its capital stock, or in other words, what enhances the value of the franchise will raise the value of its capital stock, and while the one may in the aggregate be more greatly enhanced than the other, yet they may equally afford a just method of arriving at the taxable value of the respective subjects. The operation of the same law determines the relative value of both stock and franchise.

The title to the stock involves the ownership of the property of a corporation, including its franchise, and variations in the value of such stock, as affected by its prosperity, indicate by necessary relation the comparative variations in the value of its franchise.

We are unable to see any force in the objection raised to this law that various corporations subjected to its provisions are thereby subjected to unequal or double taxation. Corporations are of course alone subject to the payment of franchise taxes, and they may be divided into as many classes as the different pursuits followed by them may require. (*State Railroad Tax Cases*, 92 U. S. 575.) The rate of taxation provided by the act seems to be justly and equitably apportioned and to bear equally upon each of the classes named therein who stand in similar relations

to each other.  Absolute equality in laying the burdens of taxation as shown by experience is impossible of attainment, and it is not an insuperable objection to a law that it does not accomplish that result.  (*Commonwealth* v. *The People's Five Cent Savings Bank*, 5 Allen, 428; *Bank of Chenango* v. *Brown*, 26 N. Y. 467.)  In the consideration of the effect and meaning of laws imposing taxes it would undoubtedly be the duty of the court to so construe them, if possible, as to avoid unequal and double taxation, but in determining the question of legislative power we are precluded from entertaining such considerations and must be governed by the constitutional authority conferred upon the legislative body.  In performing the duty of levying taxes for the support of government, State legislatures may, in the exercise of their undoubted power, impose double taxes or lay burdens beyond the financial capacity of the classes taxed, and however impolitic or unwise such a course would be, the courts have no right to interfere with the exercise of the legislative discretion.  (*The People, ex rel. Griffin*, v. *The Mayor of Brooklyn*, 4 N. Y. 419; *Gordon* v. *Cornes*, *infra*.)  Such questions properly belong to the legislative branch of the government, whose exclusive duty it is to apportion and impose the taxes required for the use of the government.  (*Monroe County Bank* v. *Rochester*, *supra*; *Gordon* v. *Cornes*, 47 N. Y. 608; *Litchfield* v. *Vernon*, 41 id. 124.)  If this question were open for examination in this court upon principle, we think the plan adopted by this law for determining the taxable value of corporate franchises is fair and equitable and affords no reasonable cause for complaint.

The tax is governed by actual results, and is measured exclusively by the prosperity of the corporation taxed, as shown by the profits voluntarily distributed among its shareholders. The mode of assessment seems to be governed by just principles and to adapt itself to the variable character of the property.  The amount is so graded that it rises and falls with the fluctuations in the prosperity of the corporation.  The various processes which are so essential in securing equality and fairness in distributing the burdens of property taxes are

rendered inapplicable and unnecessary by a rule which refers the valuation of the thing taxed to the owner of the property without reference to the actual value of his invested or accumulated property, and is based upon the principle by which a business tax alone is supported. It must be borne in mind that this tax is a fractional tax, for which an equivalent property tax has been surrendered, and thereby substantial equality of taxation may be presumed to have been produced even as between individuals and the corporations taxed. In this case the propriety of the method is made apparent from the fact that although nearly two-thirds of the capital of the defendant is invested in government bonds, but about one-quarter of its income is derived from that source.

It would seem that these corporations could not fairly claim exemption for more than the proportionate amount of income which is derived from investment in exempted securities, but we feel constrained to hold, in accordance with the principles laid down in the cases cited, that the tax in question was a tax upon franchises alone, and was, therefore, within the exercise of legitimate legislative power.

The judgment should be affirmed.

All concur.

Judgment affirmed.