**188** People ex rel. Adirondack P. & L. Corp. *v.* Durey.

Supreme Court, December, 1925. [Vol. 126

The People of the State of New York ex rel. The Adirondack Power and Light Corporation, Relator, *v.* Ernest L. Durey and Others, as Assessors of the Town of Caroga, County of Fulton and State of New York, for the Year 1924, Defendants.

Supreme Court, Fulton County, December 22, 1925.

**Taxation — constitutional law — provision of Laws of 1924, chap. 504, authorizing reassessment of flowage rights for 1923, stricken from prior assessment roll, is valid — easements, consisting of water storage and flowage rights, owned by electric light and power corporation, are taxable in town where power is used.**

Chapter 504 of the Laws of 1924, a special act, authorizing the reassessment of flowage rights owned by an electric power and light corporation for the year 1923, the assessment of said rights having been previously held to be too indefinite to constitute a legal assessment, is constitutional and valid.

Easements, consisting of water storage and flowage rights purchased by an electric light and power corporation for the purpose of regulating the flow of water and thereby improving its power plant, are taxable in the town where the power plants are located and the water power is used.

Proceeding to review an assessment for the year 1924, and an additional assessment made pursuant to chapter 504 of the Laws of 1924, and to determine the constitutionality of this special act of the Legislature.

*Snyder, Cristman & Snyder,* for the relator.

*J. William Titcomb,* for the defendants.

Herrick, J. The relator in this proceeding is a domestic corporation engaged in the development of hydraulic power and the conversion of the same into electrical energy. Two of its power plants are located on what is known as the East Canada creek, the northerly one at Inghams Mills in the towns of Manheim, Herkimer county, and Oppenheim, Fulton county, and the southerly one at Beardslee's Falls in the said town of Manheim, Herkimer county, and the town of St. Johnsville, Montgomery county. The East Canada creek has its source in the Adirondack section and for some distance flows southerly along the westerly boundary lines of Fulton and Montgomery counties and the easterly boundary line of Herkimer county, and empties into the Mohawk river near the hamlet of East Creek.

In the town of Caroga, Fulton county, there are a number of small lakes constituting what is known as the Canada Lake group. The drainage from these lakes comes together in one of the group known as Lily lake and there forms the headwaters of a stream known as the Big Sprite creek which flows southwesterly, dis-

charging its waters into the East Canada creek, northerly of the relator's two power plants.

Prior to 1923 the relator purchased of the Durey Land and Lumber Company several small parcels of land situated in the said town of Caroga and so located with reference to the lakes and the outlets thereof as to provide suitable dam sites. By the same conveyance the relator also acquired the right to construct and maintain dams on the lands so purchased or elsewhere for the purpose of storing water during the high stream flow and of releasing the same during the low stream flow, together with the privilege of flooding the adjoining lands of the grantor.

During the year 1923 the assessors of the town of Caroga assessed the so-called dam sites, describing each parcel separately and made a further assessment, appearing upon the roll as follows: " East and West Canada Lake and Green Lake, Adirondack Power and Light Corporation. Value of flowage rights in the Town of Caroga $75,000."

Subsequently the relator reviewed this assessment under the Tax Law, when the assessment for " flowage rights " was ordered stricken from the roll. (*People ex rel. Adirondack Power & Light Corp. v. Durey*, 123 Misc. 111.)

Thereafter the Legislature enacted chapter 504 of the Laws of 1924, entitled "An Act to authorize an additional assessment of certain property of the Adirondack Power and Light Corporation in the town of Caroga, Fulton county, for the purposes of the annual tax of the year nineteen hundred and twenty-three, and to provide for levy of a tax for such year on the amount of the additional assessed valuation, if any, of such property."

In 1924, and after the passage of this special act by the Legislature, the assessors of the town of Caroga made what is termed an additional assessment for the year 1923 and also its assessment for the year 1924.

By this proceeding the relator seeks a review of the so-called additional assessment for the year 1923 and the assessment for the year 1924, which includes easements and rights to store water.

The relator also in this review challenges the constitutionality of this special act of the Legislature and insists that the legislative body exceeded its powers in passing it.

There can be no question that the powers of the Legislature over tax laws and taxation are very broad. It has long been the settled law of this State that the powers of the Legislature are unlimited except to the extent that they are restrained by the Federal and State Constitutions. (*Gautier v. Ditmar*, 204 N. Y. 20, 25; *People ex rel. Griffin v. Mayor, etc., of Brooklyn*, 4 id. 419.)

The Legislature may in the exercise of its power go to the extent of imposing double taxes or laying burdens beyond the financial capacity of the classes taxed, and however impolitic or unwise such a ,course would be, the courts have no right to interfere with the exercise of the legislative discretion. (*People* v. *Home Ins. Co.*, 92 N. Y. 328, 347; *People ex rel. Hatch* v. *Reardon*, 184 id. 431, 443.)

The apparent purpose of this special act was to make legal provision whereby the assessors of the town of Caroga for the year 1924 could apportion the whole or some part of the rejected item, and as thus apportioned, add it to the several small parcels of land referred to as dam sites. In other words, it was intended by this act to so clothe the board of assessors of 1924 with authority, notwithstanding the Special Term decision, to return this item, or some part thereof, under sanction of law, to the assessment roll of 1923, the assessment of " flowage rights " having been held by the Special Term as too indefinite to constitute a legal assessment. (*People ex rel. Adirondack Power & Light Corp.* v. *Durey*, 123 Misc. 111.)

Property assessed must be designated by boundaries or some other description by which it may be known, otherwise it cannot be sold for taxes, and where such an error has been made in a previous assessment and that assessment has been set aside, the courts have held that it cannot be carried into the tax for the subsequent year and so make the reassessment legal. Where the whole question has been before the court and by it determined adversely, in the second proceeding the first decision is *res judicata.* (*People ex rel. Robinson* v. *Banfield,* 36 Misc. 13.)

Except for the intervention of the Legislature by the passage of the special act referred to, the assessors of 1924 would have no right to again add the rejected assessment to the 1923 roll. Hence it follows, if the special act offends against either the State or Federal Constitution, that then the so-called " additional assessment " for 1923 must fail. The extent of legislative control over taxes and taxation is a subject which has been discussed by the courts on frequent occasions. Some of these judicial observations are of interest and are helpful here.

The Legislature may in the interests of the State, go behind any annual tax return. If a taxpayer has been evading the payment of his taxes by making false returns, the Legislature may give a new remedy to the State for enforcing a right which it had all the time possessed, namely, the right to the taxes upon property liable to taxation. (*Sturges* v. *Carter*, 114 U. S. 511.)

The Legislature may also protect the State where and whenever

the assessing officers fail to place upon an assessment roll property subject to taxation, by directing that such property so omitted shall be placed upon the roll of any succeeding year. The courts have determined that such legislation is not retroactive; that it takes away no vested right of the taxpayer; that it imposes upon him no new duty or obligation and subjects him to no new disability in reference to past transactions. (*People ex rel. Brooklyn City R. R. Co.* v. *Brooklyn Assessors*, 92 N. Y. 430; *Sturges* v. *Carter*, 114 U. S. 511.)

Further, it has been determined that the Legislature has power to provide for the assessment of property which has escaped taxation in prior years or which has been grossly undervalued.

In *Weyerhaueser* v. *Minnesota* (176 U. S. 550, 558) Mr. Justice MCKENNA says: " If an officer omits to assess property or grossly undervalues it he violates his duty, and the property and its owners escape their just share of the public burdens. * * * It would be very strange if the State, against a gross undervaluation of property, could not in the exercise of its sovereignty give itself a remedy for the illegal deficiency."

It has been held in this State that " the Legislature determines expenditures and amounts to be raised for their payment, the whole discussion and all questions of prudence and propriety and justice being confined to its jurisdiction. It may err, but the courts cannot review its discretion." (*Spencer* v. *Merchant*, 100 N. Y. 585, 589.)

Also that the Legislature has power to legalize and validate claims, supported by a moral obligation and founded in justice, against a town or the State, which has previously been declared invalid by the courts, because of the failure on the part of one of its officials to strictly follow some prescribed statutory proceeding. It may even impose such a tax although the claim has been previously rejected by the voters of the town, when submitted to them, under an act of the Legislature authorizing such submission and declaring that their decision should be final and conclusive. (*Town of Guilford* v. *Supervisors*, 13 N. Y. 143; *Cole* v. *State*, 102 id. 48; *Wrought Iron Bridge Co.* v. *Town of Attica*, 119 id. 204.)

From the foregoing references, it is plain that this special act is similar in principle at least, to prior acts of the Legislature of this State, as well as of other States, which have from time to time found their way into the courts on some constitutional question; and in this connection it will be observed that the courts in dealing with questions involving the subject of taxation and tax laws have quite uniformly upheld the validity of such laws. It cannot, therefore, be said that the Legislature exceeded its power in passing this special act.

To intelligently consider the remaining objections, it is necessary first to have a clear understanding of the provisions contained in the deed from the Durey Land and Lumber Company to the relator, and especially such parts thereof as relate to the easements and the flooding privileges sought to be taxed by the town of Caroga.

In addition to the several small parcels therein described and referred to as dam sites, the deed conveys to the relator certain easements and flooding privileges designated as Lily Lake, West Canada Lake, East Canada Lake and Green Lake easements, Nine Cornered Lake easements, Bellows Lake easement, Fry's Flow easement, Pine Lake easements and Irving Pond easement.

A consideration of the first of the above-mentioned easements will answer for all of them.

The Lily Lake dam site contains about six acres. The Lily Lake, West Canada Lake, East Canada Lake and Green Lake easements are described as " the perpetual right, privilege and easement to construct, maintain and operate a dam   *   *   *   across the outlet of Lily Lake   *   *   *   and to thereby raise the water in East Canada Lake, West Canada Lake, Lily Lake and Green Lake and the inlets and outlets thereof." This provision in the deed further recites that it is intended " to convey the perpetual right to flood by means of the said dam, the lands, lakes and ponds connected with the said Lily Lake and the inlets and outlets thereof." The same paragraph of the deed contains a further provision reading " together with the further right to perpetually flood the lands now owned or hereafter acquired by said Lumber Company adjacent to said waters, to such an additional height at any time as may be desired by the Power Company, by said dam or by the erection of a dam at any point upon lands which may be acquired or controlled by the Power Co. or any replacement of said dam, and to draw down the waters therefrom as the Power Company may desire, together with the right to use the said waters either for the generation of electricity upon the lands above described or by storing up waters and releasing· the same by means of said dam to be used elsewhere by the Power Company as and when the Power Company may desire, or both." The deed also contains an additional provision material to the determination of the question presented, reading: " The Lumber Co. also conveys to the Power Co. the same perpetual right, privilege and easement to raise and lower the waters of Canada Lake, West Canada Lake, Lily Lake and Green Lake, and the inlets and outlets thereof, as above provided by means of a dam or dams upon the lands of the Power Co. or lands of other parties, the same so far as the Lumber Company is concerned as if said dam was constructed upon the lands of the Lumber Co."

The material question is the determination of the tax district in which the easements referred to are taxable. The power company contends that the town of Caroga is not the proper tax district; that the company is and has been paying the tax on these privileges elsewhere and unless the assessment now before the court for review is corrected, the relator will be subjected to double taxation and forced to pay double taxes.

The power company has never constructed a dam across the outlet of Lily lake. There is no dam at that point. The waters of these lakes and the outlets and inlets thereof are raised and lowered by means of a dam owned by relator located on the Big Sprite creek at Stewarts Landing in the town of Stratford.

The scheme in actual operation is the flooding of lands of the Durey Land and Lumber Company located in the town of Caroga by means of the relator's dam located at Stewarts Landing in the town of Stratford and utilizing the lands of that company as a storage reservoir from which to draw water during the low water flow for use at its hydro electric plants situated on the East Canada creek below the union of the Big Sprite and the East Canada.

" When an easement is carved out of one property for the benefit of another, the market value of the servient estate is thereby lessened, and that of the dominant increased practically by just the value of the easement; the respective tenements should therefore be assessed accordingly." (*Tax Lien Co.* v. *Schultze,* 213 N. Y. 9, 11; *Jackson* v. *Smith,* 153 App. Div. 724; 154 id. 883; affd., 213 N. Y. 630.)

The easements referred to in the deed were carved out of the lands of the Durey Land and Lumber Company for the benefit of what? Surely not for the benefit of an undeveloped dam site. It seems to me that the benefit was intended to go and in fact does go, to the improvement of the hydraulic power at the relator's hydro electric plants.

Hydraulic power plants without an adequate water supply are of little value. It can hardly be doubted that the underlying purpose in acquiring these easements was the improvement of this power by providing a more certain and uniform flow of water to the hydraulic plants. The storage, the flow and the turbines are all necessary units which go to make up the whole in the development of hydraulic power. This power in turn is utilized at the power houses for the generation of electric current.

" Water power until applied to mills is potential, not actual, in the sense that it is property subject to taxation. When applied to the mills it becomes a part of the property, thereby giving them

13

value, the proper subject of taxation. It then becomes the main element of value, not as water, not as power, but as an integral part of the mills themselves. Without it, what value could a water mill have? " (*Union Water Power Co.* v. *Auburn*, 90 Me. 60; *Boston Mfg. Co.* v. *Newton*, 22 Pick. [Mass.] 22.)

The question presented here has been before the courts of this State on a similar state of facts. In *Matter of Hall* (116 App. Div. 729) it was held that the right of the landowner in one town to draw water for mill purposes from a pond situated in another town, through a natural outlet, he having no title to the lands under the water of the pond, is an easement incorporeal in its nature and is appurtenant to the mill property; and as such is taxable in the town where the lands to which it is appurtenant are situated. This holding was affirmed by the Court of Appeals (189 N. Y. 552) and was subsequently cited with approval by that court in *Tax Lien Co.* v. *Schultze* (213 id. 9, 12).

While the law upon this question varies in different States, it seems to me that the logic of the situation and the weight of authority in this State, as well as in other States, all lead to the conclusion that the water storage and flooding privileges are easements, incorporeal in their nature, created for the benefit of relator's hydraulic power plants and are appurtenant thereto. (2 Farnham Waters & Water Rights, § 433; 37 Cyc. 777; *Matter of Hall*, 116 App. Div. 729.)

In conclusion, it follows that the so-called easements are taxable in those tax districts where the water is used for power development and are not taxable in the town of Caroga.

An order may be prepared and submitted directing accordingly.