THE PEOPLE OF THE STATE OF NEW YORK ex rel. ADIRONDACK POWER AND LIGHT CORPORATION, Respondent, *v.* ERNEST L. DUREY and Others, Assessors of the Town of Caroga, County of Fulton, State of New York, for the Year 1924, Appellants.

Third Department, July 1, 1927.

Taxation — assessment — constitutional law — Laws of 1924, chap. 504, authorizing reassessment in 1924 of property, assessment of which in 1923 had been vacated for indefiniteness of description, not invalid — dam sites containing few acres with flowage rights are assessable in town where land is located — assessment cannot be made in town where power was to be used.

Chapter 504 of the Laws of 1924, authorizing the town of Caroga, Fulton county, to reassess certain property in 1924 for the year 1923, which assessment had been stricken from the 1923 rolls on the ground of indefiniteness of description, is valid, and the town had the right to reassess that property.

Certain dam sites, each consisting of a few acres of ground with a perpetual right to flood adjoining lands that will be submerged when the dams are completed

and closed, which sites and flowage are located in the town of Caroga, were properly assessed in that town, notwithstanding the purpose of the dam sites was to retain water so that there would be a continuous flow of power to be used by the relator in other towns or tax districts.

APPEAL by the defendants, Ernest L. Durey and others, from an order of the Supreme Court, made at the Montgomery Special Term and entered in the office of the clerk of the county of Fulton on the 29th day of December, 1925, striking certain assessments against the relator's real estate from the assessment rolls and directing a refund of the taxes.

*J. William Titcomb*, for the appellants.

*Snyder, Cristman & Snyder* [*David E. Snyder* of counsel], for the relator.

VAN KIRK, J.  This proceeding was brought by the relator, a domestic corporation, to review assessments made against its property in the town of Caroga, Fulton county, N. Y., on the tax roll of 1924, which included a reassessment for the year 1923. The 1923 assessment had been vacated solely on the ground of indefiniteness of description of the property assessed. (123 Misc. 111.)  An act of the Legislature, chapter 504 of the Laws of 1924, authorized the assessors of the town of Caroga in effect to reassess the property for the year 1923 upon its assessment roll of 1924. Such proceedings were had that this reassessment was made and the tax levied.  We think that the Special Term was right in holding that the Legislature had power to enact the law and that it is valid.  (*People ex rel. Adirondack P. & L. Corp.* v. *Durey*, 126 Misc. 188, 191.)

Each of the parcels assessed lies in the town of Caroga and was conveyed to the relator by the Durey Land and Lumber Company; each parcel consists of a dam site of a few acres, together with the perpetual right to flow adjoining lands that would be submerged when the dam is completed and closed.  Each dam site is located at or on the outlet of a lake.  All the waters from the several lakes are discharged through one stream on which the grantee, the relator, has developed electric power plants.  These power plant properties are located far down the stream from the town of Caroga and are in no wise connected with the dam sites and flowage rights save by the natural course of the stream.  No one of these power sites was conveyed in connection with the lands and rights here assessed, nor were they acquired from the same grantor.  All of the waters which are stored or can be by reason of contemplated constructions are those of the watershed which discharges through this stream.  After the reservoirs are constructed

the waters, which before had run off and been wasted during the flood periods of the year, will be held and be discharged gradually to sustain the volume of the stream during the dry periods. These waters so discharged may be used for power purposes by every lower riparian owner on this stream regardless of any provision in the deed from the lumber company to the relator. When such waters enter the stream they become an indistinguishable part of the stream, neither owned nor controlled by any person. The grantor was powerless to direct where or by whom they could be used.

The respondent contends that the only question presented is one of law; that it is not one of overvaluation, but one of jurisdiction to make the assessments; and it further says that the fundamental error of the assessors of the town of Caroga is their attempt to assess certain easements in the town of Caroga which were created to be used and are used in other tax districts. More correctly the one question here is whether the dam sites with the appurtenant right to perpetually flood adjoining lands by means of dams constructed thereon, the dams, and the potential power on the premises are property assessable in the town of Caroga where they are situated.

The Special Term held that all these are to be treated as a " water power " in use and are only taxable in those tax districts where the water is used by relator for power purposes; it made an order in which it determined that the assessments of the four dam sites and the connecting flowage rights " are each and all illegal, null and void," struck them from the assessment roll and ordered refund of the taxes paid. The theory on which the Special Term made its decision and on which the respondent now relies is as follows: " ' When an easement is carved out of one property for the benefit of another, the market value of the servient estate is thereby lessened, and that of the dominant increased practically by just the value of the easement; the respective tenements should therefore be assessed accordingly.' (*Tax Lien Co.* v. *Schultze*, 213 N. Y. 9, 11.) " That in this present case the easements were carved out of the lands of the Durey Land and Lumber Company, and that the benefit was intended to go, and in fact does go, to the improvement of the dominant estate, namely, the hydraulic power at the relator's hydro-electric plants. That " ' water power until applied to mills is potential, not actual, in the sense that it is property subject to taxation. When applied to the mills it becomes a part of the property, thereby giving them value, the proper subject of taxation. It then becomes the main element of value, not as water, not as power, but as an integral part of the mills themselves. * * * ' (*Union Water Power Co.* v. *Auburn*, 90 Me.

60.)"  (*People ex rel. Adirondack P. & L. Corp.* v. *Durey,* 126 Misc. 188, 193, 194.)

This argument discloses the error of the Special Term. That court viewed the assessment as one exclusively of water power in use. Unduobtedly the power of a stream used at a mill gives the mill property an added assessable value. (*People ex rel. Niagara Falls P. Co.* v. *Smith,* 70 App. Div. 543.) A stream on which are a score of separate developed power plants adds its value for power to each of the twenty different plants; but this truth has no application here. The assessments complained of are not assessments of water power. Each separate assessment is upon the acres of land conveyed for a dam site together with the perpetual right to maintain a dam and flood adjoining lands " to the height specified in a certain agreement " and to store water as more particularly described " in a certain deed given by the Durey Land & Lumber Company to the Adirondack Power and Light Corporation, dated December 20th, 1920." The acres for dam sites are certainly real estate assessable where they are situated. The right to perpetually flood the lands is the full right to use the lands. Such a right is an interest in the land and must be conveyed by an instrument executed with the same formalities as are necessary to convey real estate and such conveyance is subject to the operation of the recording act. (2 Farnham Waters & Water Rights, 1779–1781.) These flowage rights are appurtenances or easements going with the dam sites. The owner of the dam site controls absolutely the storage of water, except that he may not unreasonably withhold waters and thus deprive lower owners of the natural normal flow of the stream. He may exclude every other person from the dam site; he may maintain a dam or not as he elects and he may trip the dam or not as he elects; and no other person may flood his acres. He alone can repair the dam. So that, with the right to control must go the flowage right. The lower plants of the relator, being in no wise connected with the dam site or the flowage rights, in no sense can be considered the dominant estate. Also there is an assessable value in a ptoential water power. (See *People ex rel. Horton* v. *Prendergast,* 220 App. Div. 351, 355.) The acreage sold for dam sites is large enough to permit of the construction of power plants or mills. And the owner of a dam can use the water as it leaves the reservoir for power. Suppose a plant is constructed on one of these dam sites. It is true that stored water has in itself no value for power; it has such value only when put to use. But a potential water power gives an added value to the lands which contain or control it. It is generally known that electric light and power companies are in our day buying properties which control such

potential powers and paying therefor prices which to the uninitiated, or perhaps to those lacking imagination, seem very large. A stream gives power and added value, for purposes of assessment, to the lands of every owner on which is a fall sufficient to justify its development for power, and this without distinction between those riparian owners who may own reservoirs, or springs, at the sources of the stream and those who own nothing above their plants.

The dam sites, the appurtenant flowage rights and any potential water power at dams which are or may be constructed at the dam sites are, for assessment purposes, real property situated in the town of Caroga. (2 Farnham Waters & Water Rights, 1501; *Pingree* v. *County Comrs. of Berkshire,* 102 Mass. 76; *Blackstone Mfg. Co.* v. *Blackstone,* 200 id. 82; *Cocheco Mfg. Co.* v. *Strafford,* 51 N. H. 455; *Quinebaug Reservoir Co.* v. *Union,* 73 Conn. 294.) Real estate is to be taxed in the tax district in which it is situated and the assessment is against the real property itself, not the owner. (Tax Law, §§ 9, 11.)

That the reservoir may increase the normal flow of the stream throughout the year and thereby increase the assessable value of the relator's plants down stream in no sense takes from the town of Caroga the right to assess real estate situated in it; and an assessment of the relator's plants, which takes into account the water power in the stream used by its plant is not an assessment upon any property in the town of Caroga. Every other plant owner using power from this stream is subject to assessment for the same element of value.

We do not think *Matter of Hall* (116 App. Div. 729) is controlling here. In that case the appellant had been granted title to seven acres of land in the town of Tuxedo and in the same grant was given the right and privilege of using or drawing off water from a pond in the adjoining town of Monroe. The appellant owned no property whatever in Monroe and his sole interest was the right conveyed to him to draw water from the pond. The court called the thing assessed a " water right " and held that this water right was not taxable in the town of Monroe. Here we have no such assessment of a naked " water right."

The property of the relator described upon the assessment roll was purchased as a separate property for a valuable consideration and by itself has a market value. The question of overvaluation is excluded from consideration in this proceeding. The assessment was and is valid.

The determination and order should be reversed, with costs.

Cochrane, P. J., Hinman, McCann and Whitmyer, JJ., concur.

Final order reversed on the law, with costs.