pealable, an appeal in a condemnation proceeding being authorized only from a final order.

Appeal from special term.

Proceeding by the Stillwater & Mechanicville Street Railway Company against the Boston & Maine Railroad for the appointment of commissioners under Railroad Law, § 12. From a judgment appointing the commissioners, defendant appeals. Appeal dismissed.

Argued before PARKER, P. J., and EDWARDS, SMITH, and CHASE, JJ.

Thomas O'Connor (Edgar T. Bracket, of counsel), for the motion.

T. F. Hamilton, opposed.

SMITH, J. By section 12 of the railroad law it is, in substance, provided that, if two railroad corporations cannot agree upon the amount of compensation for making intersections or connections, or upon the grades or manner of such intersection, "the same shall be ascertained and determined by commissioners, * * * as is provided in the condemnation law." There is in the railroad law no other provision for the procedure to determine such a controversy. By this provision the procedure under the condemnation law seems to be added to this section for the purpose of determining the questions therein presented. As a part of that procedure, an appeal is authorized by a defendant only from a final order in the proceeding. See Village of St. Johnsville v. Smith, 61 App. Div. 380, 70 N. Y. Supp. 880. By section 3359 of the Code of Civil Procedure, which is a part of the condemnation law, it is provided, "Whenever any person is authorized to acquire title to real property, for a public use by condemnation, the proceedings for that purpose shall be taken in the manner prescribed in this title." In the preceding section real property is defined as "any right, interest or easement therein or appurtenances thereto." If, then, the procedure under the condemnation law has become a part of the railroad law by reference thereto in section 12, this appeal is unauthorized, and the motion to dismiss the same should be granted.

Appeal dismissed, without costs. All concur.

---

(67 App. Div. 333.)

PEOPLE ex rel. UNITED STATES ALUMINUM PRINTING PLATE CO. v. KNIGHT, Comptroller.

(Supreme Court, Appellate Division, Third Department. December 31, 1901.)

TAXATION—FRANCHISE TAX—PATENT RIGHTS.

Patent rights cannot be included in determining the franchise tax required of a domestic corporation on its appraised capital by Laws 1896, c. 908, § 182, since patent rights are nontaxable.

Smith, J., dissenting.

Certiorari by the people, on the relation of the United States Aluminum Printing Plate Company, against Erastus C. Knight, as

comptroller of the state of New York, to review the determination of the comptroller in assessing a franchise tax against the relator. Determination of comptroller reversed.

Argued before PARKER, P. J., and SMITH, EDWARDS, CHASE, and HOUGHTON, JJ.

Smith & Martin (Charles Robinson Smith and Newell Martin, of counsel), for relator.

John C. Davies, Atty. Gen., and Henry B. Coman, Dep. Atty. Gen., for respondent.

PARKER, P. J. The relator is a domestic corporation, with a capital stock of $1,100,000, all of which was invested in patent rights. These patents seem to all have relation to aluminum in its application to lithography, and its business is that of granting, upon a royalty, license to lithographers to use such patents and the plates made therefrom. The tax is levied for two years ending October 31, 1900, and during that time the relator had paid no dividends whatever, and a part of the time at least, appears to have been clearly insolvent. The comptroller, in ascertaining the "appraised capital" employed in this state, included in his valuation the patent rights; and the question presented by this record is whether he might lawfully do so. In the event that such patents could not lawfully be so included, then the taxation by the comptroller is concededly erroneous.

Although there are several decisions in this court holding, upon the authority of People v. Insurance Co., 92 N. Y. 328, that it was not error to include patent rights in ascertaining the value of a corporation's capital stock, for the purpose of fixing the tax to be assessed against its franchise (People v. Wemple, 61 Hun, 53, 58, 15 N. Y. Supp. 711; Id., 63 Hun, 444, 18 N. Y. Supp. 511); and although in the case of People v. Campbell, 138 N. Y. 543, 34 N. E. 370, 20 L. R. A. 453, such a method was sanctioned by the court of appeals, when it was clear that the patents were being employed within this state,—yet I am of the opinion that the more recent case of People ex rel. A. J. Johnson Co. v. Roberts, 159 N. Y. 70, 53 N. E. 685, 45 L. R. A. 126, is an authority that requires us to now hold the other way. And the attorney general, in his points, practically concedes that such is the situation unless the rule there laid down is applicable only when the corporation assessed is a foreign one. The Johnson Case, 159 N. Y. 70, 53 N. E. 685, 45 L. R. A. 126, above cited, was one where a foreign corporation doing business in this state was assessed by the comptroller, and in estimating the value of its capital employed within this state, under the provisions of sections 182 and 190 of the corporation tax law (Laws 1896, c. 908), he included the copyrights owned by it. The court, referring to its recent decision in People v. Assessors, 156 N. Y. 417, 51 N. E. 269, to the effect that patent rights might not be included by local assessors in valuing the personal property of a corporation, held that both patent rights and copyrights stood on the same basis, and that neither should be included by the comptroller in the estimate required by such sections.

The attorney general argues that, as the decision in 156 N. Y. 417, 51 N. E. 269, applied to a tax levied upon the patents themselves, and was cited as authority for excluding them in the computation made by the comptroller under sections 182 and 190, the court in the Johnson Case must have concluded that in the case of a foreign corporation the tax was in its nature similar to that made by local assessors directly against the property itself, whereas the tax against a domestic corporation is concededly against its corporate franchise merely; and within the decision in People v. Insurance Co., 92 N. Y. 328, the amount of such a tax may be measured in any way the legislature sees fit, and that government bonds, or any nontaxable property, may be included in the amount used as a basis for computing it. He therefore claims that the case at bar, relating to a domestic corporation, is not affected by the decision in the Johnson Case. I am not able, however, to discover that any such distinction entered into that decision, or in fact exists. In neither case is the tax levied directly against the patent rights themselves. The principle of taxation is the same in both cases. In the case of a domestic corporation, the purpose is to tax that intangible property belonging to it, which is frequently of great value, and rests solely in its right to exist and carry on its business. Such property is not reached by local taxation, but is by the franchise tax provided for in section 182 made taxable by the state officers and solely for the benefit of the state at large. After providing for such a tax, and arranging for the rate and basis upon which it shall be levied, the same section provides that a foreign corporation shall "pay a like tax for the privilege of exercising its corporate franchises, * * * within this state, to be computed upon the basis of the capital employed by it within this state." In the instance of a foreign corporation, it is not its franchise that is taxed, because it is not subject to the laws of this state; but it is that intangible property, which rests solely in the privilege allowed it of exercising its franchise within this state, upon which the tax is levied. That property is not liable to local taxation, but is made liable to a tax which, like the domestic franchise tax, is levied by state officers and applied solely to the state at large. And the rate and the basis upon which it is made up are exactly the same as that of the domestic corporation tax. In each case it is an intangible right upon which the tax is levied, and in each case the method of fixing the value of such right is the same. It is no more an assessment upon the patents themselves in the case of a foreign corporation that it is in the case of a domestic corporation; and in neither is it intended as an assessment upon anything other than a mere intangible right to exercise a franchise within this state. The decision, therefore, in the Johnson Case is controlling alike in both cases, and I discover nothing in that case to indicate that any such distinction was in the mind of the court. That decision was put solely upon the inviolability of the copyrights. They were nontaxable property, and therefore the comptroller should not have included them in ascertaining the amount of its capital employed within this state. So in the case now before us, not having paid any dividend, the relator, under the provisions of section 182, was to be assessed

"at the rate of one and one-half mills upon each dollar of the appraised capital employed within the state," and in estimating the amount of that capital the comptroller should not have included the nontaxable patent rights as any part of such capital. The construction for which the attorney general contends would result in an unjust discrimination against domestic corporations. That the court which decided the Johnson Case would be slow to make such a discrimination is apparent from its argument, found upon page 86, 159 N. Y., page 690, 53 N. E., and page 130, 45 L. R. A., of that case, concerning the right to tax the good will of that corporation in this state. I am of the opinion that, under section 182 above cited, no such discrimination as is claimed by the attorney general is intended, and that no provision of that law requires us to hold that nontaxable property must be included in the estimate of a domestic corporation's capital, and excluded in estimating that of a foreign corporation within this state.

The determination of the comptroller was in this respect erroneous, and should be reversed, with $50 costs and disbursements, and the matter remitted to him for readjustment of the tax. All concur, except SMITH, J., who dissents.