CATHERINE A. GETMAN, as Administratrix of the Estate of MABEL E. GETMAN, Respondent, v. GEORGE NIFEROPULOS et al., Defendants, and CITY OF JOHNSTOWN et al., Appellants.

FAYETTE E. MOYER, Respondent, v. BLANCHE WILSON et al., Defendants, and CITY OF JOHNSTOWN et al., Appellants.

Argued October 5, 1937; decided November 23, 1937.

*Alfred  D.  Dennison* for appellants.  The Appellate Division erred in holding that penalties and interest were

not collectible in addition to the face of the tax. (Laws of 1905, ch. 393, §§ 96, 101, 106, 232, as amd.) The 1925 school tax in the first above-entitled action did not cease to be a lien. (*People* v. *Salter*, 191 App. Div. 723; *McGaffin* v. *City of Cohoes*, 74 N. Y. 387.)

*Fayette E. Moyer* for respondents. The officer making a sale in a mortgage foreclosure action can only pay from the proceeds of sale such taxes, assessments and water rates as are liens upon the property sold. (Civ. Prac. Act, § 1087; *First Citizens B. & T. Co.* v. *Rutger Development Co.*, 144 Misc. Rep. 745; *People ex rel. Adirondack Power & Light Corp.* v. *Durey*, 123 Misc. Rep. 111; *Matter of N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 342; *City of Rochester* v. *Farrar*, 44 Misc. Rep. 394; *Rupert* v. *Village of North Pelham*, 139 App. Div. 302; *Lawton* v. *City of New Rochelle*, 114 App. Div. 883; *Fulton* v. *Krull*, 200 N. Y. 105; *Zink* v. *McManus*, 121 N. Y. 259.) There is no provision in the charter (L. 1905, ch. 393) under which interest may be charged against the delinquent taxpayer unless the officials have taken the steps prescribed. (*Matter of New York* v. *Brooklyn Bridge*, 137 N. Y. 95.) There is no lien on land for taxes unless the statutory requirements have been complied with within the time prescribed. (*Matter of Bodine*, 74 Misc. Rep. 498; *Feldman* v. *Barshay*, 246 N. Y. 130; 246 N. Y. 535.) The city can take but one method of collecting the unpaid taxes each year, and, having elected the method, is confined to that method. If it fails to carry out the directions of the city charter each year it loses its right to proceed in any subsequent year, as no provision is made for reassessing unpaid taxes in any subsequent year. (*Matter of Bodine*, 74 Misc. Rep. 498; *Feldman* v. *Barshay*, 246 N. Y. 130; 246 N. Y. 535; *Matter of Morse*, 189 App. Div. 803; 190 App. Div. 946; *Bennett* v. *Peck*, 112 N. Y. 649; *Bennett* v. *Peck*, 28 Hun, 447; 95 N. Y. 661; *Sharp* v. *Spear*, 4 Hill, 76; *Alexander* v. *Gordon*, 101 Fed. Rep. 91.) The city having elected to adopt the tax sale method of collecting, all proceedings must rest

on a strictly legal or statutory basis, and it must appear that all essential steps have been taken. (*Bennett* v. *Peck*, 112 N. Y. 649; *Bennett* v. *Peck*, 28 Hun, 447; 95 N. Y. 661; *Sharp* v. *Spear*, 4 Hill, 76; *Buffalo L.,ˉ T. & S. D. Co.* v. *Depew Mfg. Co.*, 66 Misc. Rep. 630; *Rathburn* v. *Acker*, 18 Barb. 393; *Matter of Douglass*, 46 N. Y. 42; *Matter of Pressel* v. *Ferris*, 148 Misc. Rep. 910; *Lancaster Sea Beach Imp. Co.* v. *City of New York*, 214 N. Y. 1; *Sanders* v. *Downs*, 141 N. Y. 424; *People ex rel. National Park Bank* v. *Metz*, 141 App. Div. 600; *Clason* v. *Baldwin*, 152 N. Y. 204; *Lockwood* v. *Gehlert*, 127 N. Y. 241; *Zink* v. *McManus*, 121 N. Y. 259; *Fulton* v. *Krull*, 200 N. Y. 105; *Burr* v. *Palmer*, 53 App. Div. 358; *Matter of Bodine*, 74 Misc. Rep. 498.)

RIPPEY, J. The Getman action was commenced for the purpose of foreclosing two mortgages, dated respectively September 8, 1927, and March 13, 1928, upon certain property situate on South Market street in the city of Johnstown. The mortgages in question were executed by George Niferopulos who was at the time the owner of the property and they were delivered by him to the plaintiff. In this action the complaint alleges that the Chamberlain of the city held a tax sale of the property on October 10, 1932, for unpaid city taxes for the years 1928, 1929 and 1930, for unpaid school taxes for the years 1925, 1928 and 1929 and for unpaid State and county taxes for the years 1928 and 1929 at which the city bid in the property for the amount of the taxes as originally spread upon the assessment rolls plus fees and interest and the expenses of sale and that a certificate of sale was on that day issued to the city.

The Moyer action was commenced to foreclose a mortgage upon property situate on Charles street in said city. Niferopulos became the owner of the property on November 13, 1917. The mortgage was executed and delivered by a prior owner on November 12, 1917, to one Lula Smith and by her assigned to the plaintiff by an instru-

ment recorded July 28, 1923. It is alleged in the complaint in that action that the city held a tax sale of the property and bid it in on October 10, 1932, for the unpaid city taxes for 1928, 1929 and 1930, unpaid school taxes for 1925, 1927, 1928 and 1929, State and county taxes for 1927, 1928 and 1929 and the sewer assessment and tax for 1927, with accrued fees and interest and the costs of sale, and that a certificate of sale was then issued to the city.

In each action plaintiff alleges that the sale was illegal and void because city officials failed and neglected to take certain steps and proceedings for the collection and reassessment of the several taxes as was required of them by the provisions of the city charter as preliminary and antecedent conditions to a valid sale of the property. It is alleged in the complaint that, for the same reason, the lien of the taxes as originally existing upon the real property had been lost. In each action the city answered and asserted that the taxes were valid liens upon the property, that the sale was a valid sale and that the liens for the taxes were superior to that of the mortgage or mortgages under foreclosure. The two actions were tried together and upon specific findings of fact and conclusions of law by the trial judge judgments were separately entered directing foreclosure and sale of the real properties involved " without prejudice as against the defendants, the City of Johnstown and Edward D. O'Neil, as Chamberlain of the City of Johnstown, as to the taxes, interest and charges thereon, as set forth in the complaint, and alleged by the plaintiff to be invalid, pending the decision of this court as to the validity or invalidity of the same." The judgment further provided that the fund should not be distributed until final determination of the issues in each action between the plaintiff therein and the city " as to the jurisdiction of the taxes and tax certificates now pending."

As indicated above, the tax sale in the Moyer case included an assessment and tax for local improvement.

The trial court held that that tax and assessment were void because of an error in the assessment. In this the city acquiesced. In consequence the judgment of the trial court was that the tax sale in October, 1932, involving the property on Charles street, was void, but it was held that the liens for the other taxes involved continued as valid liens upon the property. In the Getman case the trial court held that the tax sale was in all respects valid and directed the referee on sale and foreclosure to pay the amount appearing on the face of the tax certificate to be due with interest at twelve per cent from the date of sale and the issuance of the certificate. The amount stated in the certificate included fees of two and five per cent and interest on the liens at the rate of seven per cent per annum from December 1, 1931 (the date when reassessment proceedings under section 104 of the charter were commenced). In the Moyer action the trial court allowed the face amount of the tax liens as originally established plus similar fees and interest. The plaintiff in each action appealed to the Appellate Division. The judgment of the trial court was affirmed in each case except (1) as to the item of $147.60 for the 1925 school tax on the Market street property which was held to be uncollectible as a lien on the property in this action because of the provisions of section 105 of the charter which will be later considered, and (2) the city, as matter of law, was precluded from collecting interest, fees and penalties on any of the taxes because it had failed to follow the procedure for collection as outlined in sections 96, 97, 102 and 103 (Laws of 1905, ch. 593), sections 101 and 104 (Laws of 1905, ch. 593, as amd. by Laws of 1916, ch. 326) and section 106 (Laws of 1905, ch. 593, as amd. by Laws of 1910, ch. 660) of the city charter. Plaintiffs have not appealed to this court. The city has appealed in each case from so much of the judgments entered on the orders of the Appellate Division as modified or reversed the judgments of the Trial Term. The questions here for

decision are (1) whether the 1925 school tax on the Market street property constituted a valid lien thereon at the time of the foreclosure and sale, and (2) whether the liens of the various taxes included interest, fees and penalties, and if so, in what amount and from what dates.

The procedure for the assessment and levy of taxes upon real property situate within the city of Johnstown is authorized and regulated, the designation of the officials and bodies required to act is made and their power and authority to act is established and the time within which the several steps required to be taken is fixed (1) as to State and county taxes by sections 92, 93, 94, 103, 104 and 310 of the city charter (Laws of 1905, ch. 593, as amd. by Laws of 1916, ch. 326) and sections 20–21, inclusive, 24–31, inclusive, and 50–58, inclusive, of the Tax Law (Cons. Laws, ch. 60); (2) as to city taxes by sections 98, 99, 100, 103 and 104 of the city charter (Laws of 1905, ch. 593, as amd. by Laws of 1910, ch. 660, and Laws of 1916, ch. 326), and (3) as to school taxes by section 877, subdivision 2, of the Education Law (Cons. Laws, ch. 16; Laws of 1917, ch. 786, § 1, as amd. by Laws of 1922, ch. 346, § 1), supplemented by the provisions of the city charter above mentioned relating to city taxes. All of the taxes in question were validly assessed. It has been so held in the courts below and plaintiffs are not here to raise any question on that point.

Where any particular unit of government in this State has jurisdiction to impose a tax on real property, the assessment rolls must be prepared and completed and the amount of the tax ascertained and determined as and in the manner prescribed by law and the assessment roll confirmed by the agency charged with the duty of confirming the roll before the assessment or tax can become a charge against or a lien or incumbrance upon the land to which it relates in all cases where the applicable statute is silent as to the time when the lien attaches.

(*Burr* v. *Palmer*, 53 App. Div. 358; *Lathers* v. *Keogh*, 109 N. Y. 583, 589.) The amount which the taxpayer must pay is then fixed and becomes due. The assessor does not spread the tax upon the roll. That is done usually by the confirming agency. Unless otherwise specifically provided, the issuance of the warrant has nothing to do with fixing the lien; the warrant amounts only to an authority and direction to the proper official to collect the tax finally fixed by the confirmation of the roll; it relates only to the tax-collecting process. The validity and certainty of the lien cannot be impaired by the failure of the confirming agency to issue the warrant for collection. In the case at bar, county and State taxes became liens upon the real property to which they relate upon confirmation of the assessment roll and the spreading of the tax by the board of supervisors of the county of Fulton at the annual meeting in December held during the year in which the assessment roll was made up. (Charter, §§ 92, 93; Tax Law, §§ 58, 59.) City and school taxes became liens upon confirmation of the respective rolls therefor by the Common Council and the delivery of the confirmed rolls to the City Clerk. (Charter, § 99.)

Under the provisions of the charter, if a city tax is not paid prior to September first of the year within which the assessment is made, or a State and county tax is not paid prior to February fifteenth of the year after which the roll is confirmed, the Chamberlain is directed to proceed by distress and sale of the goods and chattels of the taxpayer. Such proceedings were instituted but resulted in failure to collect. Thereafter the city officials were authorized by the provisions of sections 103–105, inclusive, of the charter to institute, on or before December fifteenth of the year following the assessment of the tax and confirmation of the roll, proceedings for a revision of the assessment roll and to carry them forward to the end that the revised roll should

be filed with the Clerk of Fulton county on or before the following January fifteenth. In the event such proceedings are taken, section 105 of the charter provided: " A certified copy of such revised assessment-roll shall be filed in the office of the clerk of Fulton county. All taxes and assessments on real property shall cease to be liens thereon, as against subsequent purchasers, mortgagees and the holders of other incumbrances unless such certified copy shall be so filed within one year after the making of the original assessment-roll. Such liens shall cease as against such persons five years after the date of filing such certified copy."

Whether the attempt to revise was effective or not, we are not called upon to decide. It is obvious that the filing of the revised roll, in any case, could not be made " within one year after the making of the original assessment-roll." We are required to construe that expression to mean " within one year after the making of the original *revised assessment-roll* " if it is to be given any effect at all. So construed, the end of the period during which the lien of all taxes continued had not arrived when the actions were commenced. Revision of the 1925 taxes was not instituted in December, 1926, and there was no *revised* assessment roll as to those taxes available for filing in January, 1927. Proceedings were taken under section 106 of the charter to sell the property for the delinquent taxes and resulted in sales on October 10, 1932. It makes no difference here whether those sales were valid or irregular. The Getman action was commenced July 17, 1933, and the Moyer action on July 31, 1933. If proceedings for the sale were irregular, the sale was void. (*Brown* v. *Goodwin*, 75 N. Y. 409, 414.) If the sale was valid, the two-year period within which the taxpayer had to redeem (Charter, § 108) had not expired before the commencement of this action. Actions at law might have been brought for the purpose of collecting the delinquent taxes under section 111

of the charter. This was not done. In the absence of some law expressly limiting the time within which steps may be taken to enforce the lien or to collect the tax, the lien is not lost by the failure of officers to take steps prescribed for collection, or by failure to collect by the institution of prescribed proceedings or by recovery of a personal judgment against the taxpayer or by the institution of proceedings and the conduct therein of a void sale. (61 C. J. pp. 944–947, §§ 1213, 1214, 1218, 1220 and cases cited.) This court has held that an irregular or defective sale does not destroy the lien. (*New York* v. *Colgate*, 12 N. Y. 140.) Section 105 alone provides for a time limitation for the duration of the lien and as, we have pointed out, it is not applicable. The lien of the 1925 school tax, therefore, was not lost.

Section 96 of the charter provides for a penalty of two per cent of the State and county tax in the event that it is not paid prior to February first of the year following the levy and an additional penalty of five per cent if it remains unpaid after February fifteenth of that year. Section 101 of the charter provides for a penalty of two per cent on city taxes if not paid before the first of June of the year in which they are levied and of five per cent if not paid before the first day of July. The penalty of two per cent on State and county taxes is to be added to the tax. The five per cent on such unpaid taxes is designated as the fee of the Chamberlain for collecting the same. In the event the city tax remains unpaid after the first day of August, the fee to be added to the tax is five per cent and that includes the previously mentioned two per cent fee on city tax. All such fees or penalties are not perquisites of the collecting agency but belong to the unit which is entitled to receive the tax. Penalties of two and five per cent are also imposed for delinquency in payment of the school taxes. Sections 106 and 111 of the charter clearly imply that interest of seven per cent per annum shall run upon delinquent

taxes from the first day of December of the year in which the tax is payable. To hold otherwise would be to place a premium on the failure to pay taxes and to penalize the person who promptly pays as against the delinquent taxpayer.

In our system of real property taxation, penalties are often imposed in order to hasten payment, but they must be plainly imposed (*Elliott* v. *Railroad Co.*, 99 U. S. 573, 576) and the law imposing them must be followed strictly. (*People* v. *Wemple*, 61 Hun, 53.) Penalties and interest are sometimes imposed as a penalty against the taxpayer for delinquency or for compelling the tax unit to proceed by action to collect the tax or to reimburse the public for the taxpayer's failure to meet promptly the common obligation imposed for the support of the government. (*League* v. *Texas*, 184 U. S. 156.) Of course, a tax lien cannot be created by implication nor enlarged by construction and interest and penalties may be declared only in the event that the statute so prescribes and then only in the manner and subject to the conditions and in the amount imposed by statute (*People* v. *Gold Telephone Co.*, 98 N. Y. 67; *City of Rochester* v. *Bloss*, 185 N. Y. 42; 1 Cooley on the Law of Taxation [4th ed.], § 22), but where interest and penalties are allowable by statute, they constitute a part of the tax lien against the property originally charged if they are for the benefit of the unit imposing the tax.

We think the provisions of the charter with sufficient clarity make the various penalties and interest specified under the conditions imposed in case of delinquency a part of the liens of the several taxes. It follows that, in accordance with the provisions of section 1087 of the Civil Practice Act, the referee should pay to the appellants (1) from the proceeds of the foreclosure sale of the Charles street property a sum representing the amount of each tax involved with fees as above indicated and interest at the rate of seven per cent per annum from

December first of the year in which the tax was payable, and (2) from the proceeds of the sale on foreclosure of the Market street property the amount stated in the certificate of sale for taxes with interest at the rate of twelve per cent per annum from the date of such sale and the issuance of the certificate.

The order and judgment of the Appellate Division in each action in so far as the findings and decree of the Special Term are reversed and new findings made, should be reversed to the extent required by this opinion and such findings of the Special Term reinstated and amounts awarded in accordance with this opinion and the provisions of the judgment of foreclosure and sale, and as so reversed and modified should be affirmed, with costs in each action to appellants.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Judgment accordingly.