*Decision will be entered under Rule 50.*

SCIO OIL AND GAS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56466.    Filed May 23, 1957.

*Ellis J. Hopkins, Esq.*, and *John W. Sanborn, C. P. A.*, for the petitioner.

*James J. Quinn, Esq.*, for the respondent.

PIERCE, *Judge:* The respondent determined a deficiency in the income tax of the petitioner for 1950 in the amount of $6,401.74. The issues presented for decision are:

1. Did the taxes on petitioner's New York real estate, for the calendar year 1950, accrue in December 1949 when such taxes became a lien on the property; or did they accrue subsequently in the year 1950? Petitioner accrued and took a deduction for such taxes in 1949; but it now contends that they should have been accrued, and are deductible by it, in 1950.

2. Should the depreciation on petitioner's oil-producing equipment, for the year 1950, be computed at a average straight-line rate of 7½ per cent, rather than at the rate of 5 per cent which respondent allowed and which petitioner used for prior years?

### FINDINGS OF FACT.

Certain facts have been stipulated. Both the written and oral stipulations are incorporated herein by reference.

Petitioner, Scio Oil and Gas Company, is a New York corporation, organized in the year 1902, which engaged in the production of oil. At all times material, it kept its books and accounts on a calendar year basis, and in accordance with an accrual method of accounting. Its income tax return for the year 1950 was filed with the collector of internal revenue for the twenty-eighth district of New York, at Buffalo.

#### Facts re Property Taxes.

Beginning in 1946 and for all subsequent years here material, the County of Allegany, in the State of New York, used a calendar year basis with respect to the assessment and collection of its real estate taxes; and the taxes levied on property in that county became a lien on the property in December of the year preceding the particular year for which the taxes were imposed. It was in December of each year that the county board of supervisors held its annual meeting, levied the taxes for the following year, and confirmed and spread the tax roll, pursuant to the then existing Tax Law of New York.[1]

In December 1949, the county board of supervisors, acting pursuant to said law, levied the 1950 taxes, and confirmed and spread the tax roll for said year; and, accordingly, the 1950 taxes on petitioner's

---

[1] Consolidated Laws of New York, chapter 60, as amended by L. 1933, ch. 470, sec. 84, to contain the following:

Sec. 58. Levy of tax by supervisors.

The board of supervisors of each county shall, at its annual meeting, levy the taxes for the county, including the state tax, upon the valuations as equalized by it and estimate and set down in a separate column in the assessment-roll of each tax district therein, opposite to the sums set down as the valuation of real property the sum to be paid as a tax thereon, including the state tax, as fixed by the department of taxation and finance. Such assessment-roll shall, when the warrant is annexed thereto, become the tax-roll of the tax district, and a copy thereof shall be delivered to the proper supervisor, who shall deliver it to the clerk of the proper city or town to be kept by him for its use.

real estate in Allegany County which is here involved, became a lien on said realty in December 1949. Thereafter in said year, the petitioner, acting in conformity with the practice which it had followed consistently for several years, accrued said 1950 taxes in December 1949, and claimed a deduction therefor in its 1949 income tax return. The taxes actually were paid by petitioner in January 1950.

Effective as of April 5, 1950, the Tax Law of New York was changed, without retroactive effect,[2] so as thereafter to cause the lien for real estate taxes to attach on January 1 of each real estate year, rather than in December of the preceding year.

Following the enactment of such new provision of the tax law, the petitioner, in its 1950 income tax return, again deducted the 1950 taxes on its Allegany County real estate, notwithstanding the similar deduction which it had taken in its 1949 income tax return. The respondent disallowed such 1950 deduction.

The property taxes here involved accrued to and became deductible by petitioner in the year 1949; and the same are not allowable as a deduction for the year 1950.

### Facts re Depreciation.

Prior to 1950, petitioner had consistently used an average straight-line rate of 5 per cent in determining its deduction for annual depreciation on its oil-producing equipment; and the respondent allowed this same rate for the year 1950. Such equipment included well equipment, pipelines, tanks, oil structures, power equipment, and plant equipment. Petitioner's practice was that, whenever one of its wells became fully depleted or had reached a point where it could no longer be operated profitably, the equipment used in connection therewith was salvaged, and at least part thereof was then used on its other leased properties.

The petitioner, in determining the amount of depreciation on equipment which it deducted in its 1950 income tax return, used for the first time an average rate of 8 per cent. It did this without having presented any formal request to the Commissioner for an increase in rate.

As of December 31, 1949, the depreciable cost basis of all of petitioner's equipment was $267,747.63, and its accumulated depreciation reserve was $90,047.34; and as of December 31, 1950, its depreciable

---

[2] L. 1950, ch. 454, sec. 2, which added the following provision :

Sec. 58–a. Lien of taxes and assessments.

The amount of all taxes and assessments levied by the board of supervisors under this chapter or other law, upon any parcel of real property located in the county shall, except as specifically otherwise provided, be and become a lien thereon as of the first day of January of the fiscal year for which such taxes and assessments are levied and shall remain such a lien until paid.

cost basis of such equipment was $262,195.62. In determining its depreciation deduction for 1950, petitioner took the mean of said depreciable cost bases as of the close of 1949 and 1950; and it then applied to such mean, the 8 per cent rate. It now claims that such rate should be 7½ per cent.

In 1950 petitioner was not in the process of liquidation. It was then engaged in operating its existing properties, and in acquiring new leases; and its intention was to continue in business.

The average rate of depreciation properly allowable to petitioner on its oil-producing properties for the year 1950 is 5 per cent.

OPINION.

*I.*

The first issue presented is whether the taxes on petitioner's Allegany County realty for the calendar year 1950 accrued and became deductible by it in 1949, or in 1950.

Section 23 (c) (1) of the Internal Revenue Code (1939)[3] allows a deduction for "taxes paid or accrued within the taxable year"; but considerable confusion has existed as to the proper date for the accrual of taxes, in the case of a taxpayer who keeps his accounts and files his returns on an accrual basis. Local law frequently determines the date on which any personal liability for real estate taxes attaches, the date on which the lien for such taxes attaches, the assessment date, and the date on which the taxes are levied; but it is Federal law which controls the meaning and application of the word "accrued," as used in section 23 (c) (1). Compare *Burnet* v. *Harmel*, 287 U. S. 103, 110, wherein the Court said:

State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law. * * *

In *Magruder* v. *Supplee*, 316 U. S. 394, the Supreme Court considered the accrual date, for Federal tax purposes, of real estate taxes imposed by the State of Maryland. The properties involved had been sold on May 10, 1936. The taxes were for the calendar year 1936. The assessment date, or "date of finality," was October 1, 1935; the taxes became due and payable on January 1, 1936, although the default date for city taxes was not until July 1, 1936, and for State taxes was not until January 1, 1937; and both the State and city had *liens* against the property from the due date of January 1, 1936. The Court said (pp. 397, 398):

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

*      *      *      *      *      *      *

(c) TAXES GENERALLY.—

(1) ALLOWANCE IN GENERAL.—Taxes paid or accrued within the taxable year, except—

It is thus apparent that tax liens had attached against the properties and that respondents' predecessors in title [the sellers] had become personally liable for the taxes prior to any of the purchases. * * * A tax lien is an encumbrance upon the land, and payment, subsequent to purchase, to discharge a pre-existing lien is no more the payment of a tax in any proper sense of the word than is a payment to discharge any other encumbrance, for instance a mortgage. * * * In discharging this assumed obligation respondents were not paying taxes imposed upon them within the meaning of Section 23 (c). * * *

In *Keil Properties, Inc.*, 24 T. C. 1113, this Court followed the decision in *Magruder* v. *Supplee, supra*, in a case which involved taxes of the State of Delaware. The Court there held, contrary to the position of the Commissioner, that it was the date on which the *lien* for the taxes attached to the property, rather than the earlier assessment date, which fixed the time when such taxes accrued and became deductible under section 23 (c) (1) of the 1939 Code. To the same effect, see *Angeles Corral*, 20 T. C. 1025 (Florida taxes); *F. A. Gillespie Trust*, 21 T. C. 739 (Oklahoma taxes); *Asthmanefrin Co.*, 25 T. C. 1139 (Oregon taxes).

Following our decision in the *Keil Properties* case, *supra*, the Commissioner reversed his position; and, in Revenue Ruling 56–145, 1956–1 C. B. 612, held that, in Delaware, ad valorem taxes on real estate accrue "when liens attach to the property."

In the instant case, the parties have stipulated that the 1950 New York taxes here involved became a lien on petitioner's properties in December 1949. Such stipulation is in conformity with the decision of the Court of Appeals of New York in *Getman* v. *Niferopulos*, 276 N. Y. 161, 11 N. E. 2d 713, 716, wherein the court said:

In the case at bar, county and state taxes became liens upon the real property to which they relate upon confirmation of the assessment roll and the spreading of the tax by the board of supervisors of the county of Fulton at the annual meeting in December held during the year in which the assessment roll was made up. * * *

Also in the instant case, the petitioner, acting in accordance with an accounting practice which it had followed consistently in prior years, accrued said 1950 taxes on its books in December 1949, and took a deduction therefor in its 1949 income tax return.

It is our opinion, based on all the foregoing, that said 1950 taxes accrued and became deductible in the year 1949, when the lien therefor attached; and that petitioner is not entitled to deduct the same in 1950. The new amendatory New York statute (sec. 58–a) did not become effective until April 5, 1950, which was subsequent to said 1949 accrual and deduction; and, although it may affect the date for accrual in subsequent years, it could not affect any accrual or deduction made prior to its effective date.

We hold for the respondent on this issue.

## II.

The second issue relates to the deduction for depreciation on petitioner's oil-producing equipment.

Section 23 (1) of the 1939 Code provides that, in computing net income, there shall be allowed as a deduction, "a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—(1) of property used in the trade or business, * * *."

Regulations 111, section 29.23 (1)–5 (as in effect for the year 1950) provides in part, as follows:

The deduction for depreciation in respect of any depreciable property for any taxable year shall be limited to such ratable amount as may reasonably be considered necessary to recover during the remaining useful life of the property the unrecovered cost or other basis. The burden of proof will rest upon the taxpayer to sustain the deduction claimed. Therefore, taxpayers must furnish full and complete information with respect to the cost or other basis of the assets in respect of which depreciation is claimed, their age, condition, and remaining useful life, the portion of their cost or other basis which has been recovered through depreciation allowances for prior taxable years, and such other information as the Commissioner may require in substantiation of the deduction claimed.

In the instant case, petitioner presented no evidence as to the age, condition, and remaining useful life of the subject equipment; or as to its probable salvage or resale value; or as to possible obsolescence. Petitioner's only witness on this issue testified that a study had been made of petitioner's *oil properties* in 1950; but the results of such study were not shown, and so far as the *equipment* was concerned, the witness presented only general conclusions. The only exhibit which petitioner presented in evidence pertained to a prospective study as to estimated crude oil recoveries for the years 1956 through 1965; and it had no direct relationship to the year 1950.

Petitioner contended that its existing oil wells were depleting rapidly; and, hence, that an increased rate of depreciation on its equipment was justified. But the evidence establishes that petitioner was not in the process of liquidating; that it intended in 1950 to continue in business; and that it was at that time seeking and acquiring new oil leases. And the evidence further establishes that, whenever a well was taken out of operation, petitioner's practice was to salvage at least part of the equipment used in connection therewith, and to use it on its other oil properties. Thus, any relationship between the depletion of its oil wells, and the remaining useful life of its equipment, was not established.

It is our opinion, based on an analysis of all the evidence, that petitioner failed to establish the inadequacy for 1950, of the average straight-line rate of 5 per cent, which it had been using in prior years

and which the respondent allowed for 1950. Accordingly, we hold for the respondent on this issue.

By reason of a correction, made by oral stipulation, of the basis for the equipment which respondent used in his notice of deficiency,

*Decision will be entered under Rule 50.*